UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MANUEL CANO, et al. <br><br> Defendants. | Case No.: 1:11-cv-00674 - LJO - JLT <br><br> FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT <br><br> (Doc. 32) |

J & J Sports Productions ("Plaintiff") seeks the entry of default judgment against Manuel Cano and Mariam A. Rojo De Cano, individually and doing business as 8 Ball Pool Hall ("Defendants"). (Doc. 32). Defendants have not opposed this motion.

Having reviewed the motion and supporting documents, the Court found the matter suitable for decision without an oral hearing pursuant to Local Rule 230(g). Therefore, the matter was taken under submission on April 19, 2013. (Doc. 35). For the following reasons, the Court recommends the motion for default judgment be **GRANTED IN PART AND DENIED IN PART**.

**I.    PROCEDURAL HISTORY**

Plaintiff asserts it possessed the exclusive rights to the nationwide commercial distribution of "The Floyd Mayweather v. Shane Mosley, Welterweight Championship Fight Program" ("the Program"), televised on May 1, 2010. (Doc. 1 at 3). Plaintiff alleges Defendants intercepted and broadcast the Program without the permission of Plaintiff. *Id.* at 2. Accordingly, Plaintiff filed its

1

complaint against Defendants on April 28, 2011, alleging violations of 47 U.S.C. § 605, *et seq.*; 47 U.S.C. § 533, *et seq.*; and the California Business and Professions Code § 17200, *et seq*. In addition, Plaintiff alleges Defendants are liable for wrongful conversion of property, arising under California State law. *Id.* at 4-8.

Defendants were served with the complaint, and filed their answers on September 16, 2011. (Docs. 10-11). The Court entered its Scheduling Order on November 29, 2011, and the matter was set for trial to be held on February 20, 2013. (Doc. 19). On January 3, 2013, the parties failed to comply with the terms of the Scheduling Order to file a pre-trial statement, and the Court issued an order to show cause why sanctions should not be imposed. (Doc. 21). A second order to show cause was issued to Defendants on January 8, 2013. (Doc. 27). Defendants failed to respond to either of the Court's orders. As a result, on January 17, 2013, their answers were stricken "for their disobedience of the Court's orders and failure to defend this action." (Doc. 28 at 2).

Upon application of Plaintiff, default was entered against Defendants pursuant to Fed. R. Civ. P. 55(a) on January 25, 2013. (Docs. 29-30). Plaintiff filed the application for default judgment now pending before the Court on March 5, 2013. (Doc. 32). The declaration of Joseph Gagliardi was filed in support of the motion on March 28, 2013. (Doc. 34).

## II.     LEGAL STANDARDS FOR DEFAULT JUDGMENT

The Federal Rules of Civil Procedure govern the entry of default judgment. When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for default judgment. Fed. R.Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically

entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

### III.   PLAINTIFF'S FACTUAL ALLEGATIONS

The factual assertions of Plaintiff are taken as true because default has been entered against Defendants. *See Pope*, 323 U.S. at 22. Plaintiff alleges that by contract, it was granted exclusive domestic commercial distribution rights to the Program, and pursuant to that contract entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. (Doc. 1 at 4). According to Joseph Gagliardi, President of J & J Sports Productions, Inc., the company endeavors "to police [its] signals for the purpose of identifying and prosecuting establishments which pirate [the] programming," and "retained, at considerable expense, auditors and law enforcement personnel to detect and identify signal pirates." (Doc. 34 at 5, Gagliardi Decl. ¶¶ 5-6).

Plaintiff asserts Defendants are each "an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as 8 Ball Pool Hall a/k/a billiards San Juan." (Doc. 1 at 3). Plaintiff alleges Defendants engaged in an act of signal piracy by broadcasting the Program in the establishment without purchasing a proper sublicense. *Id.* at 4. For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and Professions Code. *Id.* at 4-8. In its application for default judgment, Plaintiff requested damages for the violation of 47 U.S.C. § 605 and conversion. (*See* Doc. 32-1). Therefore, the Court will address only these claims.

## IV. APPLICATION OF THE *EITEL* FACTORS

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh in favor of granting Plaintiff's motion for default judgment.

### A. Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. In general, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

### B. Merits of Plaintiff's claims and sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

#### 1. Claim arising under 47 U.S.C. § 605

The Federal Communications Act of 1934 ("Communications Act") "prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (citing 47 U.S.C. § 605(a)). The Ninth Circuit has determined that "'communications' protected by § 605(a) include satellite television signals." *Id.*

In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the … contents … of such intercepted communication to any person." 47 U.S.C. § 605(a). Thus, Plaintiff must establish it was the party aggrieved by Defendants' actions. 47 U.S.C. § 605(e)(3)(A). In addition, Plaintiff is required to demonstrate Defendants intercepted a wire or radio program and published it without Plaintiff's permission. 47 U.S.C. § 605(a).

           *a.*      *Party aggrieved*

Under the Communications Act, a "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6). In the Complaint, Plaintiff asserted that it was granted the exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 4). However, the rate sheet for the Program attached as Exhibit 1 to the declaration of Mr. Gagliardi indicates the G & G Closed Circuit Events, Inc. was the only legal licensor for the Program:

> All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G & G Closed Circuit Events, Inc. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY.

(Doc. 34, Exh. 1). Further, individuals with questions regarding viewing packages were directed to contact Art Gallegos, Vice President of G & G Closed Circuit Events. *Id.*

Although the evidence provided appears to contradict the allegations presented in Plaintiff's complaint, previously Mr. Gagliari filed a declaration in a similar action before this Court, explaining his company used G & G Closed Circuit Events "to sell closed-circuit licenses to commercial locations throughout the United States . . . and for that reason, it was G & G (rather than [Plaintiff]) that prepared the Rate Card evidencing commercial licensing fees applicable" to the Mayweather v. Mosley Championship Fight Program.[1] *See J & J Sports Prods. v. Figueroa, 2011 U.S. Dist. LEXIS 112880*, at *8 (E.D. Cal. Sept. 30, 2011). Based upon this explanation, in *Figueroa*, the Court determined Plaintiff was the party aggrieved under the Communications Act. *Id.*

           *b.*      *Interception and publication of the Program*

Plaintiff acknowledges that it "cannot determine the precise means that the Defendants used to receive the Program." (Doc. 32-1 at 8). Similarly, in *Joe Hand Prod. v. Behari*, 2013 U.S. Dist. LEXIS 37277 (E.D. Cal. Mar. 18, 2013 ), the plaintiff was unable to identify the nature of the program's

---

[1] Plaintiff is warned that in the future, **the Court will not cure defects in the factual allegations**. If Plaintiff fails to provide information supporting a finding that it is the party aggrieved, or provides evidence contrary to the allegations presented in the complaint, the Court will not find Plaintiff has alleged facts sufficient to state a claim under Section 605.

transmission. As noted by the Court, "Plaintiff's inability to allege the precise nature of the intercepted transmission in this case . . . raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Joe Hand*, 2013 U.S. Dist. LEXIS 37277, at *7. Nevertheless, Plaintiff has provided evidence that Defendants broadcast the Program in their establishment, because the investigator witnessed the Program on several televisions at 8 Ball Pool Hall. (Doc. 32-3 at 2).

Therefore, Plaintiff has established the elements of a claim under the Communications Act, because Plaintiff was a party aggrieved, and Defendants intercepted the Program and published it without permission from Plaintiff.

### 2. Conversion

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Previously, this Court determined the possession of "a right to distribute programming" constitutes ownership of properly for purposes of conversion. *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (citing *Don King Prods./ Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to possess the ownership of, or right to license, the broadcasting of the Program.

Given that Plaintiff established it held the distribution rights, the company held a "right to possession of property." In addition, Plaintiff has alleged facts sufficient to support a finding that Defendants engaged in signal piracy by broadcasting the program without a sublicense. Plaintiff's investigator estimated the establishment had a capacity of approximately 100 people (Doc. 32-3 at 2). The rate sheet indicates a sublicense cost $4,200.00 for an establishment with the capacity between 51-100 persons. (Doc. 34, Exh. 1). Consequently, Plaintiff has established damages in the amount of $4,200.00, and has stated a claim for conversion against Defendants.

**C.     Sum of money at stake**

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff seeks compensatory damages for Defendants' tortuous conversion of Plaintiff's property. (Doc. 32-1 at 20). Also, Plaintiff requests statutory damages totaling $110,000 for the violation of 47 U.S.C. § 605. This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages. *Id.* at 8. Plaintiff acknowledges Defendants would have been required to pay $4,200.00 to broadcast the program at the establishment, but asserts Defendants should be required to pay the statutory maximum because nominal damages have proven insufficient to combat piracy. *Id.* at 19-20. Thus, Plaintiff appears to concede that amount of damages requested is not proportional to Defendants' conduct.

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. *See, e.g., Joe Hand Promotions v. Streshly*, 655 F. Supp. 2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Montes*, 2013 U.S. Dist. LEXIS 9282, at * 5 (N.D. Cal. Jan. 22, 2013) ("the large amount of money that Plaintiff is requesting—maximum statutory damages—weighs against granting an entry of default judgment, particularly because the amount requested appears disproportionate to the harm alleged"); *Moore v. Cisneros*, 2012 U.S. Dist. LEXIS 177044, at *5 (E.D. Cal. Dec. 12, 2023) ("[d]efault judgment is disfavored when a large sum of money is involved"); *but see G & G Closed Events, LLC v. Shahen*, 2012 U.S. Dist. LEXIS 58723, at *18 (E.D. Cal. Apr. 26, 2012) ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment). However, as discussed below, the Court declines to enter judgment in the amount requested. Therefore, the factor does not weigh against Plaintiff's request for default judgment.

**D.     Possibility of dispute concerning material facts**

The Court considers also the possibility of dispute as to any material facts in the case. Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendants have failed to defend the case. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra*

7

*Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against entry of default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether Defendants' failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. In this case, Defendants were served with the Summons and Complaint, as well as the motion for default judgment. (*See* Doc. 32-1 at 23). Although Defendants initially appeared in the action, their failure to actively participate in the action resulted in their answers being stricken by the Court. Given these facts, it is unlikely that Defendants' actions were the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). Accordingly, this factor does not weigh against default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Defendants' failure to defend in this action makes a decision on the merits impractical. Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment.

## V. DAMAGES

Having accepted the well-pleaded allegations as true, Plaintiff established the elements of a violation of the Communications Act and the tort of conversion. Therefore, Plaintiff is entitled to damages based upon Defendant's act of signal piracy. Plaintiff argues that "it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendant's unlawful actions." (Doc. 32-1 at 9). As noted, Plaintiff requests the statutory maximum, including enhanced damages, for violation of the Communications Act and damages for the tort of conversion, bringing the total requested to $114,200.

///

### A.     Statutory Damages

Under the Communications Act, the party aggrieved may recover statutory damages "not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C. § 605(e)(3)(C)(i)(II). When a court finds a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing amount awarded up to $100,000.00 for each violation. *Id.* at § 605(e)(3)(C)(ii).  The Court has "wide discretion" to determine the proper amount of damages to be awarded.  *DirecTV Inc. v. Le*, 267 Fed. App'x 636 (9th Cir. 2008) (citation omitted).

A court may consider many factors to determine whether an act was "committed willfully" and the amount of damages to be awarded.  Notably, "the mere assertion that Defendant acted willfully is insufficient to justify enhanced damages."  *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000).  Previously, this Court explained:

> To establish significant commercial advantage or private financial gain, a plaintiff must allege something more than the mere airing of a pirated program, such as engaging in promotional advertising, imposing a cover charge, or charging a premium for food or drinks.  The size of the audience, the establishment, or both is also relevant to the measure of enhanced damages, as is whether the customers are present primarily to watch the broadcast or have come for another purpose while the program is being aired.

*Integrated Sports Media, Inc. v. Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *10-11 (E.D. Cal. Aug. 11, 2010) (internal quotation marks, citation omitted) (citing *Backman*, 102 F.Supp.2d at 1198).  Many courts consider the number and size of televisions upon which the pirated program was broadcast.  *Id.* Finally, the pirating history of the defendant is a factor, and damages may be enhanced for repeated offenses.  *See, e.g., Joe Hand Promotions v. Gamino*, 2011 U.S. Dist. LEXIS 1960, at *9 (E.D. Cal. Jan. 10, 2011); *J & J Sports Productions, Inc. v. Ferreyra*, 2010 U.S. Dist. LEXIS 21140, at *11-12 (E.D. Cal. Mar. 9, 2010).

Here, Gilbert Tate, Plaintiff's investigator, noted he observed five television sets, including "2 flat screen about 36," two regular televisions, and one projector.  (Doc. 32-3 at 2). According to Mr. Tate, the capacity of the establishment "is approximately 100 people," and he "counted approximately 85 people on the first head count and 95 people on the second count."  *Id.*  Plaintiff has not presented evidence that a premium was charged for food and drink the night of the Program, that the broadcast

was advertised at 8 Ball Pool Hall, or that Defendants are repeat offenders who have engaged in signal piracy on prior occasions. However, Mr. Tate noted he paid a cover charge of $7.00 to enter 8 Ball Pool Hall. *Id*. Therefore, Plaintiff has shown Defendants acted "for the purposes of direct or indirect commercial advantage or private financial gain" as required for enhanced damages.

Given these facts, the Court finds an award of $10,000 is appropriate in statutory damages, plus $5,000 in enhanced damages, for a total of $15,000. *See Vargas,* 2013 U.S. Dist. LEXIS 43497 (awarding a total of $14,000 where the program was broadcast on five televisions to between 125-130 patrons, the capacity was 150 persons, and the broadcast license cost $4,200).

### B. Damages for Conversion

Although Plaintiff seeks separate compensation for the tort of conversion, because Plaintiff chose to receive statutory damages rather than actual damages under the Communications Act, damages for conversion are subsumed into the total of $15,000. *See J &J Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal. Mar. 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory scheme" where the award total was $3,200 and the cost of the proper license was $2,200); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (E.D. Cal. May 7, 2010) (declining conversion damages because statutory damages "sufficiently compensate[d]" the plaintiff).

### IV. FINDINGS AND RECOMMENDATIONS

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. However, the damages requested are disproportionate to Defendants' actions. Importantly, when determining the amount of damages to be awarded for signal piracy, "the principle of proportionality governs." *Backman*, 102 F.Supp.2d at 1198. Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Id.*

Accordingly, the Court recommends the award of $15,000 for Defendants' wrongful acts. This amount, which is more than three times the cost of a proper sublicense, both compensates Plaintiff for the wrongful act and is a suitable deterrent against future acts of piracy. *See Lake Alice Bar*, 168 F.3d at 350 (observing that a lower statutory award may deter while not destroying a business).

Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's application for default judgment (Doc. 32) be **GRANTED IN PART AND DENIED IN PART AS FOLLOWS**:

   A. Plaintiff's request for statutory damages for the violation of the Communications Act be **GRANTED** in the amount of $10,000;

   B. Plaintiff's request for enhanced damages be **GRANTED** in the amount of $5,000;

   C. Plaintiff's request for damages for the tort of conversion be **DENIED**; and

2. Plaintiff be directed to file any application for attorney's fees pursuant to 47 U.S.C. § 605 no later than fourteen days from the entry of judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 10, 2013**                            **/s/ Jennifer L. Thurston**
                                                                   UNITED STATES MAGISTRATE JUDGE